# EXHIBIT A

| SUMMONS<br>CC 636987 | DOCKET NO.<br>2677CV00854 | Massachusetts Trial Court<br>Superior Court |
|---|---|---|

RECEIVED CITY CLERK'S OFFICE 2026 OCT -1 P 1:55

Pauline LESLIE
PLAINTIFF(S)

v. City of Boston et al.
DEFENDANT(S)

Thomas H. Driscoll CLERK OF COURTS

Essex COUNTY

FORWARDED BY THE BOSTON, MA CITY CLERK TO THE

OCT 01 2026

**THIS SUMMONS IS DIRECTED TO** City of Boston LAW DEPARTMENT **(Defendant's name).**

**You are being sued.** The Plaintiff(s) named above started a lawsuit against you. A copy of the Plaintiff(s)' Complaint filed against you is attached to the Summons, and the original Complaint has been filed in Essex (Salem) Superior Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**
   If you do not respond, the Court may decide the case against you and award the Plaintiff(s) everything requested in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff(s). **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**
   To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff(s)' attorney, or the Plaintiff(s) if they are not represented by a lawyer. You can do this by:
   a) Filing your **signed original** response with the Clerk's Office for Civil Business in Essex Superior Court, by mail, in-person, or electronically through the web portal **www.eFileMA.com** if the Complaint was e-filed through that portal; or
   b) Delivering or mailing a copy of your response to the Plaintiff(s)' attorney, or the Plaintiff(s) if they are not represented by a lawyer, at the following address: Pauline LESLIE P.O. Box 8124, Lynn, MA 01904

LAW DEPT '26 OCT 1 PM2:27

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the facts alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff(s), called counterclaims, that are based on the same facts or events described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff(s) about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

Another way to respond to a Complaint is by filing a "Motion to Dismiss" if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Massachusetts Rules of Civil Procedure, Rule 12.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

**www.mass.gov/law-library/massachusetts-superior-court-rules**

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot find or afford legal help, some basic information for self-represented litigants is available at: **www.mass.gov/courts/selfhelp**.

5. **Required Information on All Filings.**

The "DOCKET NO." appearing at the top of this Summons is the unique case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness: Hon. Michael D. Ricciuti, Chief Justice, on this date, 9/22/26 (Seal)

Clerk: [signature].

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

## PROOF OF SERVICE OF PROCESS

I certify that on this date, ____________________, I served a copy of this Summons, together with a copy of the Complaint, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________.

DATE: ______________________________ Signature: ______________________________

**TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX – BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON DEFENDANTS.**

**DATE:** ______________________________

26()14732

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

ESSEX COUNTY, ss CIVIL ACTION NO. 2677CV00854

Pauline LESLIE

(Plaintiff)

v.

UNIVERSITY OF MASSACHUSETTS BOSTON,
Devin PRONCO, CITY OF BOSTON,
BOSTON EMERGENCY MEDICAL SERVICES,
BOSTON PUBLIC HEALTH COMMISSION,
Carey GLEASON and Jocelyn BRANDAO

(Defendants)

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND ON ALL COUNTS**

This is a civil action seeking damages and other compensation, in an amount to be determined at trial against the Defendants. The actions and omissions of the Defendants, UNIVERSITY of MASSACHUSETTS BOSTON, Devin Pronco, BOSTON EMERGENCY MEDICAL SERVICES ("BEMS"), BOSTON PUBLIC HEALTH COMMISSION ("BPHC"), Carey Gleason, Jocelyn Brandao and the CITY OF BOSTON caused Plaintiff, Pauline LESLIE, to suffer severe physical, emotional and mental distress. Rather than providing appropriate and reasonable assistance, the **Defendants' intervention exacerbated** the Plaintiff's condition and resulted in additional harm, for which Plaintiff seeks relief.

**PARTIES**

1. The Plaintiff, Pauline LESLIE is an individual residing in Southern Essex County, Commonwealth of Massachusetts.

2. The defendant, UNIVERSITY OF MASSACHUSETTS BOSTON ("UMASS") is a state institution for public higher education and does business in Suffolk County, Commonwealth of Massachusetts.

3. The defendant, Devin Pronco ("PRONCO") is an individual acting under the color of state law, and does business in Suffolk County, Commonwealth of Massachusetts.

4. The defendant, CITY OF BOSTON ("CITY") is an incorporated municipality having

principal place of business at 1 City Hall Square, Boston, MA in Suffolk County, Commonwealth of Massachusetts.

5. The defendant, BOSTON EMERGENCY MEDICAL SERVICES ("BEMS") is a Boston municipal Emergency Medical Service and is supposed to be a public safety agency having principal place of business in Suffolk County, Commonwealth of Massachusetts.

6. The defendant, BOSTON PUBLIC HEALTH COMMISSION ("BPHC") is a Boston health department that offers programs and services governed by a seven-member Board of Health appointed by the Mayor of Boston with a principal place of business in Suffolk County, Commonwealth of Massachusetts.

7. The defendant, Carey Gleason ("Gleason") is an individual who does business in Suffolk County, Commonwealth of Massachusetts.

8. The defendant, Jocelyn Brandao ("Brandao") is an individual who does business in Suffolk County, Commonwealth of Massachusetts.

**PRESENTMENT**

9. Pursuant to M. G. L. c. 258, § 4, Plaintiff served a presentment letters by certified mailed, return receipt requested via USPS on April 13, 2024, upon the Mayor of the City of Boston Mayor Michelle Wu; the Executive Director of the Boston Public Health Commission ("BPHC"), Bisola Ojikutu, cc: to Chair of the BPHC, Gregory Wilmot; General Counsel, Batool Raza; and Attorney General of the Commonwealth of Massachusetts ("AG"). Plaintiff previously mailed a copy of the presentment to BPHC and provided a copy to Batool Raza on November 20, 2023. (**See Exhibit 1, p. 1**). **The City of Boston,** AG **and BPHC each responded to the presentment letter**.

10. Pursuant to M. G. L. c. 258, § 4, Plaintiff served presentment letters by mailed certified mail, return receipt requested via USPS on March 20, 2025, and July 15, 2025, upon Chancellor of UMASS, Marcelo Suárez-Orozco, Attorney General of the Commonwealth of Massachusetts, Andrea Campbell; Chief of Police for UMASS Boston, Stacey Lloyd; and UMASS Boston General Counsel, David A. Lowy. (**Exhibit 1, p. 2**). Plaintiff previously mailed Five presentment letters on October 2, 2024. **No response to those presentment letters was received**.

**JURISDICTION**

11. This court has jurisdiction over the defendants pursuant to Massachusetts General Laws, Ch. 212 §, 4 and venue is proper under M. G. L. c. 258 §, 3.

12. This court has personal jurisdiction over the defendants pursuant to Massachusetts General Laws, Ch. 223A §, 3 as the defendants (a) transacted business, (b) contracted to supply services, and (c) caused tortuous injury by their intervention, acts and omissions, in the Commonwealth of Massachusetts.

## FACTS

13. On or about Wednesday, July 19, 2023, at approximately 8:21 pm, the Plaintiff Pauline LESLIE ("Pauline") was lawfully parked and sitting in her sports utility vehicle ("SUV"), on Columbia Point Drive at UMASS, in a designated waiting area located on a dead-end circular roadway, while waiting to pick up her daughter after class. The male witness was also present in the area and was seated in a black SUV parked in front of Pauline's vehicle. The location was designated by UMASS as a waiting area for individuals picking up students, faculty and visitors.

14. Pauline was relaxing in her vehicle with her shoes removed, engaged in a phone conversation with her female friend when she suddenly heard a commotion in the nearby construction site that was about 60 or so feet away near the Columbia Point Drive roundabout. The construction site was partially enclosed by a temporary fence supported by poles and cinder blocks. Other areas by this construction site were not enclosed and remained open and readily visible to the public. UMASS Boston is a public university with frequent visitors and pedestrians.

15. Upon hearing the commotion, Pauline looked in her driver's side mirror and observed a white construction truck slammed into a red truck. Immediately after, Pauline saw and felt the temporary construction fence fell against the passenger side of her vehicle, followed by a very loud BANG to the rear right passenger side causing her vehicle to shift and spun abruptly. Pauline was jerked forward and backward inside the SUV. Pauline also saw the witness in the black SUV drove farther away.

16. Pauline instantly felt a sharp pain in the right-side of her back. Frightened, disorientated, and in distress, **she exited her vehicle barefoot, screaming and crying**, "I just got hit" as her friend was still on the phone before she abruptly hung up on her.

17. Pauline saw liquid pouring from the front of the truck and believed it was oil and that there would be an explosion. While attempting to determine how to protect herself, a young male approached her briefly from behind the temporary construction fence and asked her to call for help and made odd hand movement. Pauline was in severe pain, frightened, and disorientated from the collision, thus she ignored him and walked up the ramp to seek a safe location. The police came in less than a few minutes, and shortly thereafter the fire truck.

18. According to the defendant, UMASS Boston Police Officer, Devin Pronco (A329) "(PRONCO"), he was "dispatched to 911 blue light number eleven (11). Per dispatch, someone had pressed the blue light button seeking assistance and only a **'fuck you'** was heard on the end of the line." (**See attached, Exhibit 2, p. 4**). Officer Pronco wrote he arrived at "approximately 2023 hours". Officer Pronco admitted upon arriving on the scene, he observed Pauline's "**vehicle** that had been **pinned against the fence.** This vehicle had its headlights facing towards the rear campus center entrance. The right side of the vehicle appeared to be pinned against the metal fencing…It should be noted that upon closer inspection this vehicle had a **broken right taillight** as well as **scratches all**

**over the right side** due to being pinned along the fence." Officer Pronco further reported he observed Pauline "standing on the pathway to the rear entrance of the campus center... **she was barefoot**, hunched over, and audibly crying. As I got closer to LESLIE I shouted and asked if she was alright. LESLIE continued to **cry** and was waving her hands in front of herself. In my experience **as a graduate of the Federal Law Enforcement Training Center and Massachusetts Municipal Police Academy, LESLIE was experiencing shock and was not able to process my questions at that time**." **(Exhibit, 2 p. 4)**.

19. Officer Pronco documented his observations and his personal knowledge about the suspect who slammed the construction truck into the fence, the poles and cinder blocks and into Plaintiff's SUV: "This individual was identified as (omitted[1]) (09/2005) A.R... **A.R. is known** to **UMASS** Boston Police, Boston Police Department, and **BEMS**... A.R. is known to have Autism, cognitive delay, a low-IQ, developmental delay and ADHD. Additionally, it should be noted that A.R. was **stopped** by Umass Boston and Boston Police Officers last week due to this individual threatening to harm himself with a firearm...After identifying A.R, **I asked** if **he was injured**. **A.R.** stated that **he was not injured**... **I asked A.R. if he was the one who drove the truck into the fence. A.R. stated that he had. I handcuffed A.R. for my safety** and his own and **relayed this information to dispatch**...It should be noted **A.R. stated** to Officer Marques (A324) **'I was trying to hurt myself** because **I am angry**'". **(Exhibit, 2 p. 4)**.

20. Pauline saw a campus police officer near the witness of the black SUV before an officer came over to her and summons an ambulance for her care and medical assistance, after complaining to the officer that she was in pain to which he told her to sit by on a nearby bench. Officer Pronco documented, "LESLIE stated that **she was sore around her back and legs.**" Pauline under severe emotional distress was trying to process what was happening to her and decline to be seen. However, Officer Pronco, "told LESLIE that she should be seen by EMS because she was **most likely experiencing shock** and that she wouldn't be able to tell if her injuries were serious. I walked LESLIE to a bench outside the Campus Center Rear Entrance and had her sit down". Officer Pronco reported, "I walked down to the scene and **alerted the medics that LESLIE would need medical attention**. Boston Fire Department medics looked over LESLIE while awaiting BEMS arrival." An ambulance arrived around 8:37 pm. Officer Pronco wrote, "... BEMS A11 arrived on Scene. BEMS began **evaluating LESLIE and put her inside ambulance 11.**" **(Exhibit, 2 p. 5)**. A female ambulance attendant briefly approached Pauline as she stood outside barefoot. Pauline told her she has pain in the right side of her back. The female asked Pauline where her shoes were, and Pauline told her it was in her vehicle.

21. Pauline observed the male officer behind the temporary construction fence restraining a male subject on the concrete ground in a seated position with his hands behind his back. From a distance, Pauline saw her daughter arrive on the scene. An officer or someone was speaking to her daughter who appeared to be crying and holding her book tightly. Pauline was placed inside the ambulance on a secured stretcher. Pronco documented the

[1] Plaintiff omitted or redacted the full name of the 17-year-old suspect, who is identified throughout this Complaint by the initials A.R. Plaintiff omitted or redacted the name and address of A.R.'s mother to protect personal identifying information.

handling of the Plaintiff and A.R: "During this time BEMS began to also evaluate A.R., **due to A.R. mental state and statements about wanting to hurt himself BEMS also placed A.R. inside ambulance 11. It should be noted that both A.R. and LESLIE were taken to Tufts Medical Center inside ambulance 11**". (Exhibit 2 p. 5).

22. After the defendants, Carey Gleason ("GLEASON") and Jocelyn Brandao ("BRANDAO") acting on behalf of BEMS arrived and secured Pauline on the stretcher, they intervened by permitting an unidentified Caucasian male[2], later identified as A.R., to be placed in the back of the ambulance with Pauline **without her consent, knowledge and without her permission**. Pauline was confused and alarmed as to why this individual was placed in the ambulance with her. A.R. was seated directly behind Pauline's head in close physical proximity. Unbeknownst to Pauline, she was unaware of A.R.'s identity, age, name, his mental health history, and or the circumstances preceding the incident until Brandao for BEMS questioned him about his protected health information in the ambulance ride. Brandao spoke about her previous encounter with A.R. the previous week and him trying to harm himself, and about harming himself now, his date of birth etc. A.R. told Brandao the truck door was unlocked, and he saw the key in the ignition. Brandao asked him if he wanted to take the truck for a drive, and he said yes. Pauline observed A.R. becoming increasingly agitated and begin swinging his hand in the air above Pauline's head. Pauline heard Brandao told A.R. no one was injured in the incident. When A.R.'s mother called him, Brandao told the mother, "No one was injured and no damages[3]".

23. Brandao asked Pauline for her full name, and address in the presence of A.R. before BEMS personnel stated she would get it (address) from her license prior to Pauline learning about A.R.'s mental health issues of suicide in ambulance 11. During the ambulance transport, Pauline was in shock and distress while listening to the conversations between A.R. and BEMS personnel. Pauline was petrified watching A.R.'s Body language and hand gestures above her head, that caused her to become increasingly frightened and concerned for her safety. She felt abandoned, unsafe, and fearful she was in further physical harm. Pauline experienced her racing heartbeat, heightened fear, confusion, and continued emotional distress because of being transported with A.R. and hearing discussions inside the ambulance.

24. Pauline states the actions of UMASS, Pronco, CITY OF BOSTON, BPHC, BEMS, Gleason and Brandao caused her to feel exposed, disregarded, and placed in an unsafe situation. Pauline expressed she was angry and terrified being in the ambulance ride from hell. After hearing the conversations regarding A.R. and observing his actions, Pauline became increasingly fearful and wanted to escape the ambulance ride from hell. Pauline stated **her concerns and medical issues were ignored,** and **she desperately wanted to escape out of the ambulance after hearing about A.R.'s mental issues** and him driving the truck. **She was petrified A.R. was going to punch her in the head,** and he appeared agitated in the ambulance. Pauline tried to stay calm, as she looked out the window to see

[2] Instead of Pauline's daughter.

[3] The damages to Pauline's vehicle exceeded $5,000.00, including but not limited to the bumper slightly bulging out to the side and her medical expenses exceeded $27,000.00 and continuing.

where she was. She wondered if she could ask the ambulance driver to let her out, but noticed it was very dark outside and she was near a bridge. Pauline described the ambulance transport as one of the most disturbing, shocking and frightening experience she has ever encountered. Pauline stated Brandao directed A.R. to stand next to Pauline in the ER unit and informed him he **might be** summons to court.

25. Pauline was traumatized by the actions and decisions of the ambulance personnel and responding police officer during and after the incident. Pauline said the officer handed A.R. over on a silver platter to terrorized her in the ambulance, and that A.R. was there for joyride in the ambulance, because he was not injured, and that the Defendants' treatment towards her was equivalent to the 911 caller's statement of "f*** you." Shortly thereafter, Pauline reported to her Primary Care Physician what happened in the ambulance ride from hell regarding the suspect being placed in the ambulance with her and her feeling terrified. Pauline described the Physician listening and looking on in disbelief and expressed this should not have occurred.

26. Following the incident, Pauline began to advocate for herself as a means of coping with and addressing the severe emotional distress she experienced because of the Defendants' actions. Pauline sought to communicate her traumatic experience and to obtain answers regarding the police and ambulance transport. On or about the afternoon of July 25, 2023, Pauline spoke with James[4], a representative of BEMS, about her terrified experience during the ambulance transport and resulting emotional distress, and James informed Pauline that A.R. should not have been placed in the ambulance with her due to the circumstances.

27. Beginning on or about July 27, 2023, BPHC, through Batool Raza engaged Pauline in a series of email communication regarding the incident. During this communication Pauline reported her concerns of their inaccuracies in their ambulance report and their alleged treatments they never performed and their denial she informed them of her back pain. Pauline disputed the accuracy of their report and her concerns for completeness and truthfulness of the information they recorded.

28. On or about August 7, 2023, Batool Raza on behalf of BPHC contacted Pauline via phone and they engaged in a lengthy conversation regarding Pauline's terrified experience in the ambulance, including concerns for her safety, privacy rights, and violations of Health Insurance Portability and Accountability Act of 1996 as amended ("HIPAA"). Pauline discussed her difficulty obtaining counseling services following the ambulance experience. Batool Raza recommended alternative counseling resources for Pauline to consider. The conversation lasted about 19 minutes. Subsequently, Pauline[5] reached out to her doctor's office for assistance and various mental health counseling providers; however, she was unable to obtain services because certain providers were not accepting new patients at that time and or had no available appointments.

29. On August 8, 2023, Pauline requested the last name of James, a copy of their policy they

[4] Last name is Domaldo, despite BPHC's failure to timely provide James's last name upon request.
[5] Pauline went to a walk-in center and reported her mental and physical distress caused by UMASS and BEMS.

referred to in transporting patients. On the same day, BPHC, Batool Raza responded "BPHC is going to respond to your request for record in accordance with the Massachusetts Public Records Law, MGL c. 66, s 10 within the timeframe allotted in the statue." **(See attached, Exhibit 3)**.

30. On or about September 15, 2023, Pauline sent an email to Batool Raza regarding her concerns that BPHC had failed to comply with the statute, including but not limited to failure to respond to Pauline's request for an amended ambulance report containing accurate facts; failure to provide the BEMS policy, if any, permitting a knowingly suicidal uninjured suspect to be transported in the same ambulance with the injured victim; and failure to provide the last name of James. **(Exhibit 3)**. Batool Raza responded on September 15, 2023, with a letter among other things that "the Commission acknowledges its delay in responding."

31. On or about October 30, 2023, Melanie Howard forwarded an encrypted email to Pauline identified as "Boston BEMS billing." Pauline responded she will never pay their bill of $1,541.23, and requested the entire bill be sent to A.R. and his mother.

32. Pauline sought mental health counseling because of the trauma and emotional distress she experienced following the actions of UMASS, Pronco and the ambulance personnel, including placing a known suicidal uninjured suspect in the ambulance with her. Pauline's ability to obtain timely counseling was delayed due to insurance coverage issues and the lack of immediate availability among local counseling providers. During this period, Pauline advocate for herself and sought to process and address her traumatic experience as a means of coping with the emotional impact of the incident. As a result of the subsequent intervention by the Defendants, Pauline states she suffered emotional distress and physical injury, and her trust and sense of safety was adversely affected.

**<u>COUNT I (1)</u>**
Negligence
(Pauline LESLIE v. UMASS and Pronco)

33. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-32 of this complaint.

34. UMASS Mission statement: "**The Umass Boston Police Department delivers professional, expert, police services to every individual we interact with. Our primary objective is to protect our community** and the well-being of its residents **and properties. Our presence is intended to minimize criminal activity and disorder while improving public safety.** We collaborate with the community to address issues that impact the quality of life and public safety. **We prioritize proactive measures to prevent crime and its associated fear, and we strive to meet the needs of those we serve by <u>continuously engaging with them</u>.**" On July 26, 2023, after Plaintiff, Pauline LESLIE ("Plaintiff"), reviewed a copy of UMASS Police report of the incident on July 19, 2023, provided to her by the UMASS Police representative, Plaintiff sent an email requesting surveillance video referenced as an USB attachment to the report. Despite her

request, the representative **failed to respond to her request** for the surveillance video.

35. Defendant Pronco as employee or agent for UMASS responded to the scene. He **intervened** to render assistance to Plaintiff, after she sustained injuries on the UMASS campus. Plaintiff stated her injuries resulted from UMASS's failure to maintain reasonably safe conditions on its premises and its failure to address foreseeable risks posed by A.R. who is known by them, through Pronco and its agents, to have a history of developmental and behavioral issues.

36. Plaintiff states UMASS, its agents and Pronco individually and vicariously failed to adequately consider or protect her safety after allowing A.R.'s restraints to be removed and permitted him to be transported in a confined ambulance without Plaintiff's prior knowledge or consent. Plaintiff states defendants failed to take reasonable precautions to protect her from the foreseeable risks associated with placing her in an enclosed ambulance with the suspect, particularly given the information known to the Defendants regarding A.R.'s statements and prior conduct. Plaintiff states this decision placed her in an unsafe and highly distressing situation during the ambulance transport from hell.

37. Plaintiff states, Pronco and UMASS owed her a duty of care to take reasonable measures to protect her from foreseeable harm, including mandatory safety measures, supervision of persons in their custody, assisting with necessary medical care and ensuring safe transportation. Pronco arrived on scene and identified the suicidal suspect A.R. who was known to UMASS and BEMS, and that he made previous statements concerning self-harm. Pronco handcuffed A.R. for his safety and knew A.R. said, "I was trying to hurt myself because I am angry" and A.R. denied being injured. Pronco said he placed the handcuffs on A.R. for his (Pronco's) and A.R.'s safety.

38. Plaintiff stated, Pronco and UMASS breached their duty to protect her when A.R.'s handcuff was removed, and he was allowed to enter Ambulance 11. A.R. was permitted to sit behind Plaintiff's head as she was immobilized and secured on a stretcher. Plaintiff said, A.R. was visibly agitated, moving his hand aggressively over her head and speaking of his crimes to BEMS where Plaintiff was in utmost fear of her life. Plaintiff further stated she thought A.R. was going to punch her in the head. The only solution on Plaintiff's mind was how to escape out of ambulance 11 ride from hell.

39. Plaintiff said the intervention of UMASS and Pronco's resulted in the breach of their duty by **failure to protect her safety** and instead placed her in a more dangerous and distressing situation. The Defendants' conduct created an unsafe environment and exposed Plaintiff to additional risk of harm following the incident.

40. Plaintiff states the wrongful acts and omissions of defendants, as set forth above, caused her to suffer physical, mental and psychological distress to which the defendants action falls outside the scope of any asserted immunity[6]. Plaintiff's symptoms include but not limited to, headaches, fear, heightened distress, nightmare, anxiety and loss of trust for first responders, feelings of vulnerability, fright, anger, depression, conscious pain and

[6] *See* G. L. c. 258 §§, 2 and 4, and G. L. c. 258 §, 10(a-j).

suffering and emotional harm. As a direct and proximate cause of the Defendants' **intervention**, the Plaintiff sustained damages for which she seeks compensation.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment be entered against the Defendants, UMASS BOSTON and PRONCO on Count I, together with interest, attorney's fees and costs of this action, and such other relief the Court deems just and proper.

**COUNT II (2)**

Negligence

(Pauline LESLIE v. GLEASON, BRANDAO, BEMS, CITY, BPHC)

41. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-40 of this complaint.

42. Plaintiff states, at no time the ambulance attendee(s) demonstrate adequate concerns for her safety, wellbeing, or emotional distress while she was being transported in ambulance 11 in close proximity to A.R.

43. Plaintiff said, the Defendants owed a duty of care to provide appropriate assistance, to protect her from further harm[7], to ensure her safety during transport, and to maintain the confidentiality of her personal and medical information in accordance with the applicable Federal laws, regulations, and Massachusetts laws and regulations. Plaintiff states, BEMS is responsible for providing temporary pre-hospital care, assessment and treatment to the patients until they are transported to a medical facility for further evaluation and care.

44. The Plaintiff said, the defendants breached their duty of care by failure, among other things, to provide adequate care, failure to provide safe and appropriate transportation, failure to protect Plaintiff from foreseeable harm, failure to maintain confidentiality[8] and documenting inaccurate information in their report. The Plaintiff further states, the Defendants failed to comply with applicable Massachusetts EMS treatment protocols and regulations, including 105 CMR 170.000. The Defendants failed to take reasonable measures to ensure patient safety at the scene and during transport, and their actions and omissions placed Plaintiff in a worse condition than she was in prior to their **intervention**.

45. Plaintiff stated the Defendant BPHC represents its mission is to protect, to preserve, to promote the health and well-being of the people. However, Plaintiff said Defendants breached its duty by negligently rendering aid acting under the authority of BPHC by unlawfully, carelessly, unskillfully, and negligently operating the ambulance during transports on July 19, 2023, resulting in Plaintiff's distress and harm.

[7] A.R. was allowed to sit directly behind Plaintiff's head as he swung his hand aggressively above her head while she was strapped to a stretcher. Brandao discussed A.R.'s suicidal history in her presence along with A.R. causing the accident that injured Plaintiff. In the presence of the Plaintiff, Brandao materially misrepresented to A.R.'s mother that no one was injured and no damages. The co-transport was unsafe and highly inappropriate.

[8] 105 CMR 170.345(D) and HIPAA

46. Plaintiff states, the Defendants' breached of duty caused Plaintiff to suffer mental distress that was foreseeable consequence of their negligence. Defendants failed to obtain prior authorization from Plaintiff before allowing the uninjured suspect to share the ambulance ride with her in disregard to her requiring medical attention. Defendants failed to take proper measures to protect Plaintiff's Protected Health Information ("PHI") in the ambulance and disclosed or exposed her personal medical information, in the presence of A.R., including her name and address in connection with her treatment without Plaintiff's informed consent, authorization or a valid waiver. Plaintiff said, the Defendants' conduct was inconsistent with the applicable obligations and standards, including under the Health Insurance Portability and Accountability Act of 1996 as amended under Federal law intended to protect the patient's health information from disclosure. Plaintiff suffered further emotional distress, fear and harm by the Defendants' actions and **intervention**.

47. Plaintiff states, the wrongful acts and omissions of Defendants, as set forth above, caused Plaintiff, Pauline LESLIE to suffer significant physical, mental and emotional distress, including but not limited to headaches, fear, nightmare, anxiety, heightened distress, and diminished trust and sense of safety, fright, anger, depression, conscious pain and suffering, and emotional harm arising from the incident **and the subsequent actions and intervention of the Defendants**. As a direct and proximate result of the Defendants' conduct, the Plaintiff sustained damages for which she is entitled to compensation.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment be entered against the Defendants on Count II, together with interest, attorney's fees and costs of this action, and such other relief the Court deems just and proper

**COUNT III (3)**

Negligent Maintenance/Supervision and Protection[9].

(Pauline LESLIE v. UMASS, PRONCO)

48. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-47 of this complaint.

49. Plaintiff states, Defendants owed a duty of reasonable care to maintain UMASS campus, including designated area, in a reasonably safe condition for students, faculty, staffs, visitors and members of the public, and the Defendants breached this duty, among other things, by allowing a temporary fencing to be placed by their designated waiting area in a manner that created an unreasonable risk of harm. The temporary fencing was unsecured, readily removable, accessible to the public, and portions of the surrounding construction site were not enclosed, allowing individuals to enter and exit the area without adequate safeguards. Plaintiff further states, Defendants failed to take reasonable precautions to protect persons, like herself, lawful use of the campus grounds from foreseeable hazards, dangerous conditions and knowingly dangerous person on the premises.

50. Plaintiff said UMASS, its police personnel, Pronco, security personnel, and agents knew or should have known of safety issues and security concerns on the campus grounds,

[9] G. L. c. 258 § 10(a-j).

including prior incidents involving A.R. They knew due to past incidents the knowingly mentally ill suicidal person, A.R., frequented the campus and had made known threats to harm himself with a gun, and such knowledge require heightened supervision. The defendants failed to take reasonable precautions to protect members of the campus community, including failure to provide any warning or notification regarding the risks associated with A.R.'s presence on the campus, failure to exercise reasonable care to provide a safe, secure, and proper supervision of activities on the campus.

51. Plaintiff stated, defendants failed to maintain appropriate security measures, proper supervision and safety precautions on their premises, and because of this, A.R. had easy access to an unlocked construction truck located on their property, with the key left in the ignition, allowing him to operate the vehicle and drive it into the fence, which struck the Plaintiff while in her vehicle. After Pronco placed handcuffs on A.R. for his safety, the Defendant later removed the restraints and allowed A.R. to enter ambulance 11 without Plaintiff's knowledge, authorization and consent. Plaintiff sustained bodily injury, emotional distress, conscious pain and suffering and incurred medical expenses and other damages due to Defendants' negligent maintenance, supervision and protection.

52. Plaintiff further states, the wrongful acts and omissions of Defendants, as stated above, caused Plaintiff, Pauline LESLIE to suffer physical harm and emotional distress, including but not limited to, fright, anger, anxiety, depression, bodily injury, and conscious pain and suffering from physical harm she experienced and for which she seeks compensation for all damages she sustained as a direct and proximate cause of the defendants' negligent maintenance, supervision and protection.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment be entered against the defendants on Count III, together with interest, attorney's fees and costs of this action, and such other relief the Court deems just and proper

**COUNT IV (4)**
M.G.L. c. 66, § 10
(Pauline LESLIE v. BEMS, BPHC, CITY)

53. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-52 of this complaint.

54. Plaintiff states, the defendants failed to provide her with timely access to inspect and copy the requested records within the time required and within the meaning of the applicable statute under M.G.L. c. 66, § 10. (**Exhibit 3**).

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the Defendants on Count IV, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the Court deems just and proper.

**<u>COUNT V (5)</u>**
M.G.L. c. 4, §7
(Pauline LESLIE v. GLEASON, BRANDAO, BEMS, BPHC, CITY)

55. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-54 of this complaint.

56. The Plaintiff states, the Defendants' actions and **intervention** resulted in the disclosure and exposure of her Protected Health Information ("PHI") and/or identifiable health information ("IHI") without her authorization or consent, in violation under the Health Insurance Portability and Accountability Act of 1996 as amended and under 45 CFR 160.103. The Plaintiff's IHI and PHI includes but not limited to common identifiers such as the individual's name, address, and birth date etc. The Defendants failed to take appropriate measures to protect Plaintiff confidential information from disclosure to A.R.

57. M. G. L. c. 4, §7(26)(s) exempts from public disclosure any information protected by statute where disclosure constitute unwarranted invasion of personal privacy. The Defendants disclosed Plaintiff's PHI and/or IHI to A.R. who caused her injuries, without Plaintiff's authorization or adequate safeguards. Defendants disregarded Plaintiff's safety and privacy by permitting A.R. to enter ambulance 11 to sit directly behind her head while she was secured on a stretcher, without obtaining her consent or taking reasonable safety measures to protect her safety. The Plaintiff experienced severe fear and emotional distress during the ambulance transport upon learning A.R.'s mental health history, learning he caused her injuries, observing his conduct and demeanor in the ambulance, and witnessing the disclosure of her personal and medical information in his presence.

58. The wrongful acts of the Defendants, as stated above, caused Plaintiff, Pauline LESLIE to suffer mental and emotional distress, including but not limited to, fright, anger, anxiety, depression, conscious pain and suffering and emotional harm arising from her experience in the ambulance for which she is entitled to compensation and damages.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the defendants on Count V, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the court deems just and proper.

**<u>COUNT VI (6)</u>**
M.G.L. c. 214, §1B and 950 CMR 33.16-INVASION OF PRIVACY
(Pauline LESLIE v. GLEASON, BRANDAO, BEMS, BPHC, AND CITY)

59. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-58 of this complaint.

60. Plaintiff states, the Defendants' **intervention** resulted in unwarranted invasion of her personal privacy. *See* G. L. c. 214, § 1B, and 950 CMR 33.16. The actions of BEMS personnels, Brandao and Gleason, were unreasonable and substantially interfered and seriously intrude into Plaintiff's privacy and seclusion. The Plaintiff's privacy rights were

invaded by disclosing her PHI to an unauthorized third party, A.R. without any legal justification or reasonable cause. The Defendant made false statements about Plaintiff to A.R. and his mother that no one was injured and no damages, despite Plaintiff's reported injuries and need of medical attention, and damages to her SUV. Had Plaintiff been informed that A.R. would be transported in the same ambulance, that her privacy and safety concerns would not be adequately addressed, and information concerning her condition, and the incident would be discussed in A.R.'s presence, she would have chosen an alternative means of transportation, including waiting for another ambulance, contacting her friend for transportation, or obtaining a taxi to seek medical care.

61. The wrongful acts and omissions of the Defendants, as stated above, caused Plaintiff, Pauline LESLIE to suffer severe mental and emotional distress, including but not limited to, fright, headaches, nightmares, anger, anxiety, depression, conscious pain and suffering, emotional harm and damages for which she seeks compensation because of the defendants' invasion of her privacy and related conduct.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the defendants on Count VI, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the court deems just and proper.

**COUNT VII (7)**

FAILURE TO TRAIN AND OR FAILURE TO SUPERVISE
(Pauline LESLIE v. GLEASON, BRANDAO, BEMS, BPHC, AND CITY)

62. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-61 of this complaint.

63. The Plaintiff states, the Defendants' **intervention** resulted in a failure to exercise reasonable care, failure to act in good faith in violation of their legal duties and responsibilities by failure to provide appropriate care, failure to secure Plaintiff's privacy rights and failure to provide safe and proper transportation following the incident.

64. Defendants did not provide proper supervision and failed to adequately train Brandao and Gleason resulting in failure to protect a patient, such as the Plaintiff's information under HIPAA and applicable law and statute and allowing A.R. to ride in the ambulance. Plaintiff states, Defendants owed her a duty of care to properly train and supervise their agents or employees. Defendants failed to maintain accurate records, omitted material information, and documented information for care that was not rendered. The acts were contrary to public policy and agency regulation. The Defendants breached their duties by engaging in unreasonable and unjustified billing practices and placing Plaintiff's safety at risk of further harm. The City of Boston, BPHC and BEMS employers consistently, knowingly, and systemically failed to adequately and properly train their Emergency Medical Technicians ("EMTs") regarding patient safety, confidentiality, documentation and appropriate medical procedures. All agents acted with supervisory, agent and or employee position, and their conduct was not a discretionary function, but involves duties imposed and mandated by state statute, Federal laws, and agency regulations.

65. Plaintiff said, the defendants CITY, BEMS and BPHC ratified and approve the conduct of their employees, including the actions and communications of Batool Raza. The defendants developed and permitted unwritten policies and practices that encouraged conduct inconsistent with applicable federal and state laws, regulations, and agency requirements governing patient safety, confidentiality, and EMS.

66. The wrongful acts and omissions of the Defendants, including their **intervention** and **subsequent conduct caused Plaintiff**, Pauline LESLIE to suffer additional harm and significant mental and emotional distress including, but not limited to, fright, anger, anxiety, depression, conscious pain and suffering, and emotional harm arising from the traumatic event herein and as a direct and proximate cause of the defendants' conduct the Plaintiff sustained damages for which she seeks compensation.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the defendants on Count VII, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the court deems just and proper.

**COUNT VIII (8)**

NEGLIGENT HIRING AND OR NEGLIGENT ENTRUSTMENT

(Pauline LESLIE v. GLEASON, BRANDAO, BEMS, BPHC, AND CITY)

67. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-66 of this complaint.

68. Plaintiff states, BEMS, BPHC and the CITY employed Carey Gleason and Jocelyn Brandao as EMTs, and they were unfit and incompetent and inadequately trained to perform their duties consistent with the applicable standard of reasonable care. Plaintiff reported her concerns to Defendants' agent, Batool Raza, and she instead defended or justified the conduct of the EMTs and indicated their actions were authorized by an existing policy or practice permitting an uninjured knowingly mentally ill suspect to be transported in the same ambulance as the injured victim without the victim's consent, while also exposing her PHI. Plaintiff further states she requested a copy of the policy or authority purportedly permitting such conduct, but no such policy or documentation was produced. The conduct described herein was inconsistent with applicable legal and regulatory requirements governing patient safety, confidentiality, and Emergency Medical Services.

69. The EMTs' **intervention** failed to safeguard Plaintiff's PHI, and their actions were inconsistent with the applicable privacy obligations, including those established under HIPAA as amended, Massachusetts laws, and related regulations governing patient confidentiality. The Defendants failed to maintain accurate medical records by omitting material facts and documenting assessments, treatment, or services that was not rendered on the Plaintiff. Their billing practices were inconsistent with applicable law, public policy and agency regulations. The Defendants engaged in unreasonable and unjustified billing practices arising from the ambulance transport causing her additional damages.

70. The CITY, BPHC and BEMS employers, supervisors, and or agents consistently, knowingly, and systemically failed to exercise reasonable care in hiring, training, entrustment and retention of suitable and competent EMTs. The Defendants knew or should have known of the deficiencies in their hiring and entrustment practices and failed to take reasonable corrective actions as shown by the actions of Batool Raza. The duties of the Defendants are governed by mandatory applicable state statute, federal laws, regulation and agency requirements therefore their acts were not discretionary.

71. BEMS, BPHC and the CITY should have known the Defendants, Gleason and Brandao **intervention** during transportation of the Plaintiff demonstrated deficiencies rendering them unfit or inadequately qualified to perform their duties in accordance with the applicable standard of care. The Defendants' actions of rendering inadequate care resulted in the Plaintiff suffering additional physical, emotional and psychological harm.

72. The actions of the EMT and the resulting harm was foreseeable to Defendants, BEMS, BPHC and CITY, as agencies with direct hiring of the EMTs, training and entrustment of EMT personnel with their vehicle. The Defendants allowed A.R. whom they knew he made prior statements of self-harm to be transported in the same ambulance as Plaintiff, the injured victim, without her prior knowledge and consent. Defendants compromised her safety and privacy, failed to provide appropriate emergency medical care and transportation and their behavior was inconsistent to their obligations under applicable federal and state laws, regulations and standards governing patient safety, confidentiality and emergency medical transportation services.

73. The Defendants' direct actions and **intervention** placed Plaintiff in a worser position then she would not have been absent their **intervention**. The defendants' conduct increased the risk of harm, exacerbated the Plaintiff's physical and emotional injuries and caused her to suffer damages beyond those resulting from the initial incident.

74. The wrongful acts of the Defendants, as stated above, caused Plaintiff, Pauline LESLIE to suffer mental and emotional distress, including but not limited to, fright, anger, anxiety, depression, diminishes trust in medical providers, conscious pain and suffering from the traumatic experience for which she seeks compensation.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the defendants on Count VIII, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the court deems just and proper.

**COUNT IX (9)**
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Pauline LESLIE v. All individual defendants)

75. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-74 of this complaint.

76. Plaintiff states, all Defendants owed a duty of care to protect her safety and to exercise reasonable care in providing protection, emergency assistance and medical transportation. The defendants breached their duty by permitting A.R. whom defendants knew made statements of self-harm and who injured the Plaintiff to enter and remain in the same ambulance as the Plaintiff without her consent. The Defendants failed to safeguard the Plaintiff's privacy and confidentiality interests, failed to provide proper and adequate care. The Defendants' action placed the Plaintiff's physical safety and emotional well-being at risk and caused her to suffer additional harm and damages.

77. The defendants BEMS and BPHC engaged in unreasonable and unjustified billing practices related to the services provided to Plaintiff. They breached their duty of care owed to Plaintiff, and as a result they caused her additional severe emotional distress and damages.

78. The Defendants' **intervention** caused the Plaintiff to seek immediate mental health counseling due to anxiety, headaches, emotional distress, and sleepless nights following the trauma from being transported in Ambulance 11.

79. The wrongful acts of the Defendants, as stated above, caused Plaintiff, Pauline LESLIE to suffer mental and emotional distress, including but not limited to, fright, anger, anxiety, depression, diminishes trust in medical providers and police, conscious pain and suffering from the traumatic experience for which she seeks compensation and damages.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the defendants on Count IX, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the court deems just and proper.

**COUNT X (10)**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Pauline LESLIE v. All individual defendants)

80. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-79 of this complaint.

81. The Plaintiff said, the Defendants' intervention and conduct were extreme and outrageous and beyond all possible bounds of decency and caused Plaintiff to suffer severe emotional distress by placing her safety, privacy, and wellbeing at substantial risk of harm. Pronco acting on behalf of UMASS, permitted A.R., the known suicidal uninjured suspect to enter Ambulance 11 without Plaintiff's informed consent and knowledge. Plaintiff further states, Pronco handcuffed A.R. for Pronco's safety but failed to take reasonable measures to protect Plaintiff by disregarding her safety when he permitted A.R. to enter the enclosed ambulance with Plaintiff. The behavior of the Defendants was intentional and or reckless with a total disregard to Plaintiff's safety. The Defendants failed to protect Plaintiff's privacy rights, failed to adequately inform her of the circumstances affecting her safety, and failed to take reasonable precautions to prevent

further harm following the incident, and this caused the Plaintiff to experience extreme fear and severe emotional distress during the transport.

82. Plaintiff further states, Brandao's **intervention** and conduct was extreme and outrageous and exceeded beyond all possible bounds of decency when she allowed A.R. to enter Ambulance 11 with Plaintiff and remain in close proximity to her during transport. Also, Brandao's conduct was intentional and or reckless because she knew the Plaintiff-patient was the victim injured by A.R.-suspect's conduct. She knew he was suicidal and was previously handcuffed, nevertheless she deliberately allowed him to sit behind the Plaintiff's head to discuss the collision and his suicidal history. Plaintiff was unable to escape. This demonstrates a disregard for Plaintiff's safety, privacy and emotional well-being. Brandao communicated to a third person, A.R.'s mother, in the presence of Plaintiff, that no one was injured and no damages, despite Plaintiff's complaint of feeling pain in her back and Pronco's observations that she was in shock. Brandao's statements and actions caused Plaintiff additional fear, distress and emotional harm.

83. The actions and omissions of all Defendants were extreme and outrageous and exceeded all possible bounds of decency that a reasonable person in Plaintiff's position could not anticipated or reasonably expected to endure the circumstances created by the Defendants' conduct. Defendants' decisions and actions resulted in A.R. being placed in Ambulance 11 with Plaintiff during transport, and this caused the Plaintiff to experienced extreme fear, emotional distress, and a sense of vulnerability. The Defendants' conduct was intentional and/or reckless and demonstrated a disregard for Plaintiff's safety, privacy, and well-being, resulting in severe emotional distress and damages.

84. The wrongful acts of the Defendants, as stated above, caused Plaintiff, Pauline LESLIE to suffer mental and emotional distress, including but not limited to, fright, anger, anxiety, depression, diminishes trust in medical providers, conscious pain and suffering from the traumatic experience for which she seeks compensation and damages.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the Defendants on Count X, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the court deems just and proper.

**COUNT XI (11)**

42 U.S.C. § 1983 and G. L. c. 12, § 11I
(Pauline LESLIE v. All defendants)

85. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-84 of this complaint.

86. UMASS Mission statement: **"The Umass Boston Police Department delivers professional, expert, police services to every individual we interact with. Our primary objective is to protect our community** and the well-being of its residents **and properties. Our presence is intended to minimize criminal activity and disorder while improving public safety.** We collaborate with the community to address issues

that impact the quality of life and public safety. **We prioritize proactive measures to prevent crime and its associated fear, and we strive to meet the needs of those we serve by continuously engaging with them." UMass failed to engage** with Plaintiff after she requested a copy of the surveillance video referenced in the police report.

87. The Plaintiff said, the Defendants' **intervention** violated her rights to protection, safety and security. Without Pauline LESLIE's informed consent or knowledge, UMASS Boston police officer permitted a knowingly dangerous suicidal, unrestrained and uninjured suspect, to enter and remain in Ambulance 11 with the victim during transport. The Defendants interfered with and deprived Plaintiff of her rights and privileges by failing to take reasonable measures to protect her from further harm, failing to safeguard her privacy, and failing to provide proper assistance and protection under the circumstances. The Defendants' conduct violated her civil rights and protections afforded under applicable federal and state law, including 42 U.S.C. § 1983. *See* G.L. c. 12, § 11I.

88. The Defendants affirmative action created an extreme unreasonable risk of harm to the Plaintiff and violated her constitutional rights by demonstrating deliberate indifference to her safety, failing to safeguard her health and wellbeing, and failing to take reasonable measures to protect her from further harm. The Defendants prioritized their own safety concerns while disregarding Plaintiff's safety and security by permitting A.R. who injured the Plaintiff, and is known to the Defendants to be violent, suicidal and uninjured to enter Ambulance 11 with the Plaintiff during transport without her consent and knowledge. Defendants' conduct constituted intimidation, coercion, and an unreasonable deprivation of Plaintiff's rights by placing her in a vulnerable position while she was restrained on a stretcher. A.R. was positioned directly behind her head, and his movements and conduct caused Plaintiff to fear he was going to punch her in the head and or suffer additional physical harm. The Defendants' actions and **intervention** caused the Plaintiff to experienced extreme fear, emotional distress, and further psychological harm during the ambulance transport.

89. Plaintiff states, BEMS, Gleason, Brandao, BPHC, and CITY created an unsafe and unreasonable transport environment through their affirmative actions in permitting a knowingly dangerous, suicidal and uninjured suspect to enter Ambulance 11 with the victim during transport. A.R. was position directly behind and above the Plaintiff's head while she was secured to a stretcher, and his volatile movements and conduct including his hand gestures near the Plaintiff's head, caused the Plaintiff to be in fear for her safety. The ambulance personnel failed to take reasonable measures to protect the Plaintiff despite the circumstances and disregard the risk of additional harm to the Plaintiff. While the Plaintiff was present and in distress, Brandao communicated with A.R.'s mother by phone that no one was injured and there were no damages, despite Plaintiff was injured, and experiencing physical and emotional distress, and there were damages. Brandao continued to engage A.R. in conversations concerning his prior encounter with her, his statements regarding self-harm, and his desires to harm himself now, while Plaintiff was left feeling ignored, frightened, shocked, and in distressed.

90. The wrongful acts and omissions of the Defendants, as stated above, caused Plaintiff,

Pauline LESLIE to suffer mental and emotional distress, including but not limited to, fright, anger, anxiety, depression, diminishes trust in medical providers, conscious pain and suffering from the traumatic experience for which she seeks compensation and damages. See *City of Revere v. Mass. Gen, Hosp.*, 463 U.S. 239 (1983).

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the Defendants on Count XI, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the court deems just and proper. See *Robbins v. Krock et al.*, 73 Mass. App. Ct. 134 (2008).

**COUNT XII (12)**
14th Amendment
(Pauline LESLIE v. All individual Defendants)

91. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-90 of this complaint.

92. Plaintiff states, UMASS and Pronco's **intervention** violated Plaintiff's rights to equal protection and deprived Plaintiff of her protected interests in safety, life, liberty, property and security. Pronco acknowledged he placed A.R. in handcuffs for Pronco's safety but failed to take comparable reasonable measures to protect Plaintiff when A.R.'s restraints were removed, and he was permitted to enter Ambulance 11 with Plaintiff without her consent and knowledge. The Defendants' actions demonstrated a disregard for Plaintiff's safety and wellbeing and deprived Plaintiff of equal protection afforded under the 14th Amendment of the Constitution. The Plaintiff further states the Defendants' conduct interfered with her rights to personal security, privacy, and liberty resulting in her suffering emotional distress and other damages.

93. The Defendants, the CITY, BEMS, BPHC, GLEASON and BRANDAO deprived Plaintiff of protected interests in safety, life, liberty, property and privacy through their actions and omissions. The Defendants infringed upon Plaintiff's privacy rights and deprived her of the protections afforded to her under the law by permitting A.R., a knowingly dangerous uninjured suicidal suspect to ride in Ambulance 11 without her consent. Defendants exposed Plaintiff's PHI to the suspect without proper authorization or adequate safeguards. They allowed A.R. to sit directly behind her head while she was secured to a stretcher while A.R. was agitated including aggressive movements of his hands above Plaintiff's head. This caused Plaintiff to be in fear that he would punch her in the head and/or sustain physical harm. The Defendants' conduct placed her safety and wellbeing at risk and caused her severe emotional distress and damages.

94. Brandao provided misleading information to A.R. and his mother regarding Plaintiff, in her presence, by stating no one was injured and no damages, despite Plaintiff's complaint of injury and emotional distress, and damages to her SUV. Brandao later informed A.R. that he **may be** summoned to court, further demonstrating the inconsistency in the information communicated regarding the incident and the Plaintiff's condition.

95. BEMS inaccurately documented treatments and services in its records that were not rendered to Plaintiff, requiring the Plaintiff to request corrections to the report and related documentations. On or about October 30, 2023, BEMS emailed Plaintiff a bill in the amount of $1,541.23 for services that was not rendered, and failed to respond to Plaintiff's email whether it was a "split fee bill."

96. BEMS failed to adequately address Plaintiff's physical injuries and emotional distress during transport in Ambulance 11. Aside from requesting Plaintiff's identifying information in front of A.R., Brandao did not provide appropriate attention to Plaintiff's reported concerns as she was ignored after she requested her PHI while giving significant attention to A.R. during the ambulance transport. The actions of the Defendants caused the Plaintiff to feel disregarded, unsafe, and unsupported during the transport and this contributed to her emotional distress and damages.

97. The Defendants adopted, maintained policies, practices and customs that resulted in violation of the Plaintiff's rights to equal protection afforded under the 14th amendment to the US Constitution and applicable federal Laws. Such policies, practices, or customs contributed to Defendants' failure to provide Plaintiff with reasonable protection, safety, privacy and appropriate assistance under the circumstances stated herein.

98. The Defendants' conduct and intervention were so egregious and unreasonable that it shocks the conscience. The Defendants' actions and omissions violated the Plaintiff's constitutional rights and protections afforded under the applicable federal Laws.

99. The wrongful acts and omissions of the Defendants, as stated above, caused Plaintiff, Pauline LESLIE to suffer mental and emotional distress, including but not limited to, fright, anger, anxiety, depression, diminishes trust in medical providers, conscious pain and suffering from the traumatic experience for which she seeks compensation and damages. *City of Revere v. Mass. Gen, Hosp*., 463 U.S. 239 (1983).

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the Defendants on Count XII, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the court deems just and proper.

**COUNT XIII (13)**

G.L. c. 253 Acts of 2020 as amended
(Pauline LESLIE v. UMASS and Pronco)

100. The Plaintiff Repeats, re-alleges and incorporates by reference as set forth hereto in their entirety Paragraphs 1-99 of this complaint.

101. UMASS adopted and/or was subject to the requirements of G.L. c. 253 Acts of 2020 on An Act Relative to Justice, Equity and Accountability in Law Enforcement of the Commonwealth.

102. Section 22 (iii) of this act requires "handling emergencies and complaints,

including, but not limited to, those involving victims, witnesses or suspects with mental illness…strategies that involve the least intrusive means of addressing such incidences and individuals **while protecting the safety** of the law enforcement officer **and other persons**." Chapter 6E Section 29 (f)(4) requires "officer shall remain in compliance with the requirements of this chapter and all rules and regulations promulgated by the commission for the duration of their employment as an officer". Chapter 6E Section 37 (2)(b) "**nothing in this subsection shall be construed to grant immunity from civil liability to a law enforcement officer for interference** by threat, intimidation or coercion…with the exercise or enjoyment any right secured by the constitution or laws of the United States or the constitution or laws of the commonwealth if the **conduct of said officer was knowingly unlawful or was not objectively reasonable**."

103. The Defendants' conduct, as described herein, was inconsistent with these statutory requirements and applicable standards governing law enforcement conduct, safety and the protection of individual rights. The Defendants disregard the requirements and protections established under the applicable law and as a result they placed the Plaintiff's safety and wellbeing at risk. The Defendant's conduct was an unlawful act and/or not objectively reasonable under the circumstances, causing Plaintiff to experience severe emotional distress, fear and emotional harm.

104. Defendants failed to provide Plaintiff with the same level of protection and safety measures they applied to themselves. They placed Plaintiff at a heightened risk of further emotional distress and physical injury by permitting A.R., an uninjured, mentally ill, and suicidal suspect to enter Ambulance 11 with the victim during transport. Defendants owed a duty to exercise reasonable care, to protect Plaintiff from foreseeable harm, and safeguard her health and wellbeing, but the Defendants breached this duty by disregarding Plaintiff's safety while taking protective measures for Pronco's safety, including placing A.R. in handcuffs during the incident. The Defendants' failure to take reasonable measures to protect Plaintiff and their decision to permit A.R. to be transported with her interfered with Plaintiff's safety, security, and liberty interests and caused the Plaintiff to suffer mental distress, fear, emotional harm and other damages.

105. The Defendants' conduct, as stated above, caused Plaintiff, Pauline LESLIE to suffer fear, psychological harm during and following the ambulance transport, including but not limited to, fright, anger, anxiety, depression, diminish trust in public servants, and conscious pain and suffering from the traumatic experience for which she seeks compensation and damages.

WHEREFORE the Plaintiff, Pauline LESLIE respectfully demands judgment against the Defendants on Count XIII, including punitive damages together with interest, attorney's fees and costs of this action, and such other relief the court deems just and proper.

**Plaintiff, Pauline LESLIE, demands a jury trial on all triable issues.**

Respectfully submitted,

Plaintiff,

Pauline LESLIE,

Autograph: Pauline sui Juris.
P.O. Box 8124
Lynn, MA 01904
781-595-1622
psalmandluke@gmail.com
edited with assistance

Dated: September 21, 2026

**EXHIBIT 1, Presentment proof of service receipts (2 pages)**



SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Boston, MA 01208

9590 9402 8623 3244 6013 08

2. Article Number: 7022 3330 0000 6737

PS Form 3811

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

OFFICIAL USE

03/20/2025

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: UMass Boston, Boston, MA 02125

9590 9402 8623 3244 6013 46

2. Article Number: 7022 3330 0000 6737 4687

PS Form 3811, July 2020 PSN 7530-02-000-9053

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

OFFICIAL USE

03/20/2025

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: UMass Boston, Boston, MA 02125

9590 9402 8623 3244 6013 39

2. Article Number: 7022 3330 0000 6737 4694

PS Form 3811, July 2020 PSN 7530-02-000-9053

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

OFFICIAL USE

03/20/2025

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Gov Maura Healey, Boston, MA 02133

9590 9402 8623 3244 6012 92

2. Article Number: 7022 3330 0000 6737 4748

PS Form 3811, July 2020 PSN 7530-02-000-9053

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

OFFICIAL USE

JUL 15 2025

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

OFFICIAL USE

7022 3330 0000 6737 4737

07/20/2025

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: One Beacon St, 3rd Fl, Boston, MA

9590 9402 8623 3244 6013 15

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

OFFICIAL USE

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: One Ashburton Place, Boston, MA 02108

9590 9402 8623 3244 6012 78

2. Article Number: 7022 3330 0000 6737 4724

PS Form 3811, July 2020 PSN 7530-02-000-9053

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

OFFICIAL USE

JUL 15 2025

07/15/2025

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

7022 3330 0000 6737 4762

OFFICIAL USE

JUL 15 2025

07/15/2025

100 Morrissey Blvd, Boston, MA 02125

9590 9402 8623 3244 6012 54

2. Article Number: 7022 3330 0000 6737 47

PS Form 3811, July 2020 PSN 7530-02-000-9053

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

7022 3330 0000 6737 4786

OFFICIAL USE

JUL 15 2025

07/15/2025

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: David Lowy, General Counsel, UMass Boston, One Beacon St, 31st Fl, Boston, MA 02108

9590 9402 8623 3244 6012 61

U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

6737 4779

OFFICIAL USE

# Exhibit 2, (6 pages)

**UMass Boston Department of Public Safety**
**Incident Report**

Page: 1
07/25/2023

**Incident #: 23-252-OF**
**Call #: 23-11626**

Date/Time Reported: 07/19/2023 2024
Report Date/Time: 07/19/2023 2137
Occurred Between: 07/19/2023 2024-07/19/2023 2137
Status: Incident Closed
Reason Closed: Complaint / warrant requested

Involves: Juveniles
Reporting Officer: Police Officer DEVIN PRONCO
Approving Officer: Lieutenant Walter Jacobs

Signature: ______________________________

Signature: ______________________________

| # | SUSPECT(S) | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|
| 1 | R[redacted] A[redacted] [redacted] | U | U | 17 | NOT AVAIL | |

Military Active Duty: N
BODY: NOT AVAIL.
DOB: [redacted]
LICENSE NUMBER: NOT AVAIL.
COMPLEXION: NOT AVAIL.
PLACE OF BIRTH: NOT AVAIL.
ETHNICITY: UNKNOWN

| # | OFFENSE(S) | ATTEMPTED | TYPE |
|---|---|---|---|

LOCATION TYPE: School-College/University Zone: On campus sites
COLUMBIA POINT DR
Dorchester MA 02125

[redacted]

**UMass Boston Department of Public Safety**
**Incident Report**

Page: 2
07/25/2023

**Incident #: 23-252-OF**
**Call #: 23-11626**

| # | VICTIM(S) | | SEX | RA | AGE | SN | PHONE |
|---|---|---|---|---|---|---|---|
| 1 | LESLIE, P[redacted] E | | F | B | 48 | [redacted] | |

[redacted]

DOB: [redacted]
INJURIES: Apparent Minor Injury
ETHNICITY: Unknown
RESIDENT STATUS: Non Resident
TAKEN TO: Tufts Medical Center
TAKEN BY: Boston E M S lance
TREATED DATE: 07/19/20 2055
VICTIM CONNECTED TO OF NUMBER(S): 1 2 3 5
RELATION TO: ROONEY AU Strange

2 J Derenzo Company
***UNKNOWN***
OTHER JURISDICTION MA

VICTIM CONNECTED TO OFFENSE NUMBER(S): 1 2 3

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|
| 1 | MACKIE, DOUGLAS<br>[redacted] | WITNESS | M | U | 57 | [redacted] | |
| 2 | [redacted]<br>[redacted] | PARENT | F | W | 44 | [redacted] | |

| # | VEHICLE(S) | YEAR | MAKE | STYLE | COLOR1 | COLOR2 | REG | VALUE |
|---|---|---|---|---|---|---|---|---|
| 1 | F350 | 1999 | FORD | | RED | | MA M70972 | $10,000.00 |

[redacted]ly Stolen) DATE: 07/19/2023

RECOVERY[redacted]: $500.00 CONDITION: MINOR DA[redacted]

| # | VEHICLE(S) | YEAR | MAKE | STYLE | COLOR1 | COLOR2 | REG | VALUE |
|---|---|---|---|---|---|---|---|---|
| 2 | [redacted] | [redacted] | [redacted]RD | TR | | | MA V85781 | $10,000.00 |

STATUS: Destroyed/Damaged/Vandalized DATE: 07/19/2023
Property #: 23-112-PR
VIN: 1FDNF6AY0KDF07385

| # | VEHICLE(S) | YEAR | MAKE | STYLE | COLOR1 | COLOR2 | REG | VALUE |
|---|---|---|---|---|---|---|---|---|
| 3 | MDX | 2010 | ACUR | UT | | | MA 2XLZ46 | $10,000.00 |

STATUS: Destr[redacted]Vandalized DATE: 07/19/2023
OWNER: LESLI[redacted]
Property #: 23-11[redacted]
VIN: 2HNYD[redacted]

UMass Boston Department of Public Safety
Incident Report



Incident #: 23-252-OF
Call #: 23-11626

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
| --- | --- | --- | --- |
| 1 | USB VIDEO OF THE INCIDENTE<br>QUANTITY: 1 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 07/24/2023<br>[redacted] | 23-11-PR | Evidence Not Nibrs Reportable |

UMass Boston Department of Public Safety
NARRATIVE FOR POLICE OFFICER DEVIN PRONCO Ref: 23-252-OF

Entered: 07/20/2023 @ 0018 Entry ID: 329

Modified: 07/20/2023 @ 0033 Modified ID: 204

Approved: 07/25/2023 @ 1314 Approval ID: 244

**On Wednesday, July 19, 2023, at approximately 2020 hours, I Umass Boston Police Officer Devin Pronco (A329) was dispatched to 911 blue light number eleven (11). Per dispatch, someone had pressed the blue light button seeking assistance and only a "fuck you" was heard on the end of the line.**

At approximately 2023 hours I turned onto Colombia Point Drive to get to the Campus Center Rear Circle where the blue light was located.

As I turned onto Colombia Point Drive, I first observed what appeared to be a commercial water truck that had been driven out of the construction site, dragging metal fencing and concrete blocks used to contain the site, into the middle of Colombia Point Drive. I estimate that the truck dragged the metal fencing approximately 60 feet before coming to a stop. A clear fluid was leaking out from the front of the truck from what appeared to be the engine block.

The commercial water truck in question was identified as commercial MA registration (reg) V85781. This truck is owned by J Derenzo Company based out of Brockton, MA. This vehicle is a 2019 White Ford Model F650. This vehicle had damage to its front left side bumper and what appeared to be metal hoses hanging off the front.

My next observation upon my arrival to the scene was a vehicle that had been pinned against the fence. This vehicle had its headlights facing towards the rear campus center entrance. The right side of the vehicle appeared to be pinned against the metal fencing.

This vehicle was identified as MA registration (reg) 2XLZ46. This vehicle is a 2010 Acura color gray utility style vehicle. The model of this vehicle is an MDX. It should be noted that upon closer inspection this vehicle had a broken right taillight as well as scratches all over the right side due to being pinned along the fence. This vehicle belongs to PAULINE LESLIE ( who will be identified later in this report.

At approximately 2024 hours I exited my patrol cruiser (104). Immediately upon exiting I observed a female standing on the pathway to the rear entrance of the campus center. The female was later identified as PAULINE LESLIE ( . As I approached LESLIE I observed that she was barefoot, hunched over, and audibly crying. As I got closer to LESIE I shouted and asked her if she was alright. LESLIE continued to cry and was waving her hands in front of herself. In my experience as a graduate of the Federal Law Enforcement Training Center and Massachusetts Municipal Police Academy, LESLIE was experiencing shock and was not able to process my questions at that time.

Simultaneously while walking to LESLIE, I heard another individual begin to scream. This individual shouted, "Somebody help me, somebody help me please". This call for help sounded agonizing and from my experience and training in Tactical Combat Casualty Care with the United States Coast Guard, (TCCC) this individual was most likely experiencing severe trauma. To prioritize the most critical injuries first I went to assist the screaming individual.

Although I was unable to see the individual that was screaming, I was able to locate where it was coming from. This individual sounded like they were located behind the 2010 Acura on the passenger side that was pinned against the fence.

At this time, I believed the individual to be wedged between the metal fencing and the 2010 Acura. I immediately sprinted back to my patrol cruiser (104) and retrieved the medical bag. I then sprinted from cruiser 104 back to the 2010 Acura. I notified dispatch to send Boston Emergency Medical Services (BEMS) as well as the Boston Fire Department.

It should be noted that BEMS stands for Boston Emergency Medical Services and will be referred as such during the rest of the report.

UMass Boston Department of Public Safety
NARRATIVE FOR POLICE OFFICER DEVIN
PRONCO Ref: 23-252-OF

Entered: 07/20/2023 @ 0018 Entry ID:
329
Modified: 07/20/2023 @ 0033 Modified ID:
204
Approved: 07/25/2023 @ 1314 Approval ID:
244

Upon arrival to the front hood of the ACURA I observed a male lying down on the sidewalk on the other side of the fencing. This individual was identified as A[redacted] R[redacted](09/[redacted]2005). R[redacted] is known to UMASS Boston Police, the Boston Police Department, and BEMS. There was nobody entrapped within the fencing or the car.
It should be noted that R[redacted] is living in the [redacted]ith his mother [redacted] R[redacted]. A[redacted]R[redacted]is known to have Autism, cognitive delay, a low-IQ, developmental delay, and ADHD. Additionally, it should be noted that A[redacted]R[redacted] was stopped by Umass Boston and Boston Police Officers last week due to this individual threating to harm himself with a firearm. After a check in CJIS R[redacted] does not have a valid LTC and his mother does not as well. There is no indication that R[redacted]has any access to firearms.
After identifying R[redacted] I asked if he was injured. R[redacted] stated that he was not injured but needed EMS due to having a breakdown. I found a hole in the fencing and made my way over to R[redacted] I asked R[redacted] if he was the one who drove the truck into the fence. R[redacted]stated that he had. I handcuffed R[redacted]for my safety and his own and relayed this information to dispatch.
It was at this time that Officer Marques (A324) arrived on scene. I passed R[redacted]to Officer Marques so I could assist LESLIE. It should be noted R[redacted]stated to Officer Marques (A324) "I jumped the fence, I tried the trucks door it was open, I saw the keys in the ignition, and I wanted to drive it." This interaction is referencing how R[redacted]got into MA reg (V85781) and drove it into the fence. It should also be noted that R[redacted]stated to Officer Marques (A324) "I was trying to hurt myself because I am angry".
While crossing over the fence I was approached by DOUGLAS MACKIE . MACKIE stated that he had witnessed everything. MACKIE stated that he saw R[redacted]un up and press the 911 blue light button. He then witnessed R[redacted]jump the fence, and eventually crash the vehicle through the fencing. I took MACKIEs information and continued to LESLIE.
I walked up to LESLIE and asked if she was alright. LESLIE stated that she was sore around her back and legs. I asked LESLIE if she needed medical assistance. LESLIE declined to be seen. I told LESLIE that she should be seen by EMS because she was most likely experiencing shock and that she wouldn't be able to tell if her injuries were serious. I walked LESLIE to a bench outside the Campus Center Rear Entrance and had her sit down.
At approximately 2033 hours, just after LESLIE sat down the Boston Fire Department Engine 21 arrived on scene. I walked down to the scene and alerted the medics that LESLIE would need medical attention. Boston Fire Department medics looked over LESLIE while awaiting BEMS arrival.
At approximately 2036 hours BEMS A11 arrived on Scene. BEMS began evaluating LESLIE and put her inside of ambulance 11. During this time BEMS began to also evaluate R[redacted] due to R[redacted] mental state and statements about wanting to hurt himself BEMS also placed R[redacted] inside ambulance 11. It should be noted that both R[redacted]and LESLIE were taken to Tufts Medical Center inside ambulance 11.
Once BEMS was clear I began to take photos of the scene. While taking photos of the scene I observed what appeared to be another vehicle that had been struck by R[redacted] This vehicle was identified as MA reg (M70972). This vehicle is a 1999 Ford color Red model F350. Additionally, this vehicle suffered damage to the front passenger side bumper. The entire passenger side bumper was torn off the vehicle as well as the passenger side headlight.
It should be noted that this vehicle belongs to OSTROW ELECTRIC COMPANY.
All owning parties of vehicles involved have been notified.

23-252-

**EXHIBIT 3**, one of many emails from Attorney Batool Raza for BPHC and BEMS, Pauline LESLIE'S response.

RB Raza, Batool
To: me · Tue, Aug 8, 2023 at 12:30 PM

Ms. Leslie,

BPHC is going to respond to your request for records in accordance with the Massachusetts Public Records Law, MGL c. 66, s. 10 and within the timeframe allotted in the statute.

Thanks,

-----

Batool Raza (she/her)
General Counsel
Boston Public Health Commission
1010 Massachusetts Avenue, 6th Floor
Boston, MA 02118
Phone: 617-534-5609
Fax: 617-419-1647

Please consider the environment before printing this email.

CONFIDENTIALITY AND INADVERTENT DISCLOSURE NOTICE:

The substance of this message, including any attachments, may be confidential, legally privileged and/or exempt from disclosure pursuant to Massachusetts law. It is intended solely for the addressee. If you received this in error, please contact the sender and delete the material from any computer.

P Pauline
To: Raza, · Fri, Sep 15, 2023 at 7:18 AM

Dear Ms. Raza,

I patiently waited for a response as you stated in your last email on August 8th at 12:30 pm that "BPHC is going to respond to your request for records in accordance with the Massachusetts Public Records Law, MGL c. 66, s 10 within the timeframe allotted in the statute", and BPHC failed to comply to the statute and my request for records. I have not received the amended ambulance report, I have not received the policy information supporting the actions that BEMS did on July 19, 2023 against me and I have not received the information about James's full spelling of his name that you stated you would provide me via phone on August 7, 2023. BEMS and BPHC failed to comply with the statute. I have been waiting for the records well over a month and no avail.

Sincerely,
Pauline Leslie

The information contained in this electronic mail is legally privileged and confidential intended only for the use of the individual or entity named above. If the receiver of this electronic mail is not the intended recipient, you are notified that dissemination, distribution or copying of this electronic mail is strictly prohibited. If you received this electronic mail in error, please immediately notify sender.

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2677CV00854 B | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Leslie, Pauline vs. University Of Massachusetts Boston et al | | Thomas H. Driscoll, Jr., Clerk of Courts Essex County |
| TO: File Copy | | COURT NAME & ADDRESS Essex County Superior Court - Newburyport 145 High Street Newburyport, MA 01950 |

**TRACKING ORDER - A - Average**

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION** **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 10/06/2026 | |
| Response to the complaint filed (also see MRCP 12) | | 11/05/2026 | |
| All motions under MRCP 12, 19, and 20 | 11/05/2026 | 12/07/2026 | 01/04/2027 |
| All motions under MRCP 15 | 09/01/2027 | 10/01/2027 | 10/01/2027 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/27/2028 | | |
| All motions under MRCP 56 | 07/27/2028 | 08/28/2028 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/25/2028 |
| Case shall be resolved and judgment shall issue by | | | 07/09/2029 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 07/09/2026 | Stefano J Cornello | (978)462-4474 |